IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MANUEL HERRERA | § |
| | § |
| | § |
| VS. | § CIVIL ACTION NO. 1:14-CV-000385-XR |
| | § |
| WERNER ENTERPRISES, INC. and | § |
| JAMES SHEARER | § |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE TESTIMONY OF DEFENDANTS' EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, and file this, their Response to Plaintiff's Motion to Strike the Expert Testimony of Dr. Richard Barrata and Dirk Smith, and would show unto the Court as follows:

1. Plaintiff filed his motion to exclude on July 6, 2015, and this response is filed timely. Plaintiff's arguments in his motion to exclude appear to be as follows:

(a) Dr. Baratta and Dr. Smith are not qualified to testify as to injury causation or medical matters and are therefore not qualified to opine on causation. *See Motion at 2*;

(b) The opinions in Dr. Barrata and Dr. Smith's report are not reliable because they work for Rimkus, which is an "expert consulting" firm. *See Motion at 2*; and

(c) Drs. Barrata and Smith's report is based on "flawed methodology" because it does not accept Plaintiff's version of the events and allegedly does not take into consideration various facts which Plaintiff believes are important. *See Motion at 7-8*.

**None** of these arguments is supported under the facts and the law, and the Plaintiff's motion should be denied.

2.      This Court does not need a primer on the law relating to *Daubert* and its progeny.[1] Generally speaking, in evaluating the admissibility of expert testimony, the court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Hodges v. Mack Trucks Inc.,* 474 F.3d 188, 194 (5th Cir.2006). While the *Daubert* factors are particularly helpful in assessing scientific testimony, the proper factors depend on the nature of the issue, the particular expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 136, 152 (1999).

3.      Importantly, "[t]he proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc); *see also Wells v. SmithKline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir.2010) ("Although there are 'no certainties in science,' the expert must present conclusions 'ground [ed] in the methods and procedures of science.' " (quoting *Daubert* at 590). At the most basic level, the *Daubert* factors act to ensure that an expert's opinion is grounded in more than "unsupported speculation or subjective belief." *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert,* 509 U.S. at 590). Thus, "[w]hen the methodology is sound, and the evidence relied upon sufficiently

---

[1] The rule provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED.R.EVID. 702. The requirement that the testimony "assist the trier of fact" means the evidence must be relevant. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Mathis v. Exxon Corp.,* 302 F.3d 448, 460 (5th Cir.2002)

{03464242.DOC / }

related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed.Cir.2010). That is, a trial court is not permitted under *Daubert* to "transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir.2002).

4. This case is virtually identical to *Hernandez v. Swift Transp. Co., Inc.*, 2010 WL 3211058 (W.D. Tex. 2010) in which this Court denied a similar motion to strike a biomechanics expert, and although *Hernandez* is not a reported case, it provides persuasive authority why the present motion is also due to be denied.

## Application of Law to the Facts

4. As an initial matter, Plaintiff's general claim that biomechanics is somehow "junk science" is complete rubbish. Texas courts, numerous federal courts sitting in Texas, and *even this court* have allowed testimony of biomechanical experts on many occasions, as evidenced by their discussion in various opinions. *See e.g., City of Paris v. McDowell,* 79 S.W.3d 601, 607-08 (Tex. App. – Texarkana 2002, no pet)(biomechanical testimony allowed); *Reynoso v. Ford Motor Co.*, 2005 WL 5994183 *3 (S.D. Tex. 2005)(finding biomedical engineer was qualified to testify); *Idar v. Cooper Tire & Rubber Co.,*, 2011 WL 2412613 (S.D. Tex. 2011)(using biomedical testimony to find fact issue exists in summary judgment context); *Hernandez v. Swift Transp. Co., Inc.,* 2010 WL 3211058 (W.D. Tex. 2010)(biomechanics expert allowed to testify). Thus, this is not a situation where a new or untested area of expertise is sought to be brought before the Court.[2] Dr. Baratta has been found to be a reliable expert on biomechanics and accident

---

[2] Dr. Baratta's affidavit explains that biomechanics is the application of principles of mechanics or engineering to problems in medicine and biology. Simply stated, the field of biomechanics involves the study of how human tissue behaves under load. As one might expect, much of the literature in the field of

{03464242.DOC / }

reconstruction by many, many courts. *See Affidavit of Baratta* at 2. Put simply, in cases involving a sideswipe contact such as the instant one, the medical, biomechanical and accident reconstruction experts can provide a unique analysis of the forces and mechanisms that would have been at play in the accident, in order to assist the trier of fact in making the decision of whether to believe or disbelieve Plaintiff's characterization of the accident and injuries, as well as its decision of whether to accept the treating physician's opinion on medical causation.

8. Plaintiff has challenged whether Dr. Baratta and Dr. Smith[3] are "qualified" to testify as to the issues for which they are designated.[4] To ensure their qualifications are properly before the Court, however, attached hereto as Exhibit 1 is the Affidavit of Dr. Baratta which fully outlines his qualifications and which details the support of this opinions in this case. A copy of his curriculum vitae is attached as Exhibit 2. Attached to the affidavit are his report in this case and various articles he relies upon and which support the opinions in his report and provides Dr. Smith's qualifications as well.

---

biomechanics relates to the study of accidents and other events and how they result in injury to human tissue. The field of biomechanics is widely accepted in the medical community, and biomechanical experts are commonly hired by medical schools. *See Affidavit of Baratta at 1.*

[3] Importantly, although Plaintiff has moved to strike Dr. Smith as a witness, he was not designated as a testifying expert, only Dr. Baratta has been. Thus, although Plaintiff is correct that Dr. Smith is not specifically trained in medicine, that argument seems irrelevant since he was not designated to testify anyway. To the extent that Plaintiff later questions his involvement, Dr. Smith's career is quite distinguished, as shown by his resume, which reveals bachelors, masters and doctorate degrees in mechanical engineering as well as ACTAR certification in accident reconstruction, as well as almost 20 years of experience in accident reconstruction activities. *See* Rimkus Report and attached C.V. Dr. Baratta, however, is perfectly capable of testifying to all matters contained in the report.

[4] Plaintiff's challenging of Dr. Baratta's credentials is patently specious. Dr. Baratta has multiple degrees in biomedical engineering, including his Ph.D., and has spent time on the faculty at LSU School of Medicine in New Orleans training orthopedic surgery residents and performing research in the field. He is also a licensed traffic accident reconstructionist, having completed a course in traffic accident investigation at Northwestern University in Illinois and being accredited by the Accreditation Commission for Traffic Accident Reconstructionists (ACTAR). He has been qualified as an expert in biomechanics and accident reconstruction approximately 61 times, including in the Southern Districts of Texas. *See Hermary v. GCA Services Group, Inc.*, 2009 WL 80696 (S.D. Tex. 2008)(Harmon, J.).

9.      The Plaintiff's first argument is that Dr. Baratta is essentially not qualified to render a "medical opinion" because he is not a doctor. Plaintiff urges that the *Guevara* and *Roark* cases somehow stand for the proposition that only medical doctors can testify as to causation of injuries. *See* Plaintiff's Motion at 6, fn. 2.  His argument is an incorrect statement of Texas law, and is completely unsupported by the cases cited by Plaintiff. Specifically, a review of the Supreme Court's holding in *Guevara* shows that the Court simply noted that "expert testimony" was necessary to show injury causation that was outside the knowledge of average jurors. *See Guevara v.* Ferrer, 247 S.W.3d 662, 666 (Tex. 2007). The Court did not engraft the phrase "by a doctor" to its holding, and confirmed that in certain cases, expert testimony might even be unnecessary. *Id.* Likewise, in *Roark*, the court said only that "[e]xpert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." *See Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). Again, there was nothing *requiring* that the causation evidence be provided by a licensed physician as Plaintiff suggests. Put simply, where qualified to do so, even a non-physician can testify about medical issues. *See Ponder v. Texarkana Memorial Hosp.*, 840 S.W.2d 476, 477–78 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (non-physician with a doctorate in neuroscience, who conducts research on the causes of neurological injuries and teaches neurophysiology, neuroanatomy and neurochemistry to M.D.s and Ph.D.s, may qualify as a medical expert on the cause of brain damage); *Bilderback v. Priestley*, 709 S.W.2d 736, 741 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (In a trial against a medical doctor who prescribed physical therapy, a non-physician professor of biophysics who taught physical therapy students could testify about "the mechanics, forces and effects of weights used in administering physical therapy."). The numerous

cases where biomechanical experts have been allowed to testify as to causation noted above further belie Plaintiff's argument.[5]

10. Plaintiff's second argument is that Dr. Baratta's testimony is unreliable because, *inter alia*, he performed no mathematical calculations, and did not "consider" the speed or weights of the vehicles or personal details about the Plaintiff in coming to his conclusion. This argument misapprehends Dr. Baratta's actual opinions and ignores the nature of the accident itself.

11. As opposed to the "high speed impact" claimed by Plaintiff, the accident in this case involves a sideswipe-type impact. There was little to no damage to the truck (and therefore nothing for the experts to review), and the pictures of the Plaintiff's vehicle after the accident adequately demonstrate the nature of the damage. Despite what is clearly a relatively minor "impact," Plaintiff has alleged several disc injuries as a result of the accident.

12. Dr. Baratta's report illustrates that the glancing contact between the vehicles here could not have resulted in dynamic forces one would reasonably expect to cause the type of exaggerated hyperflexion or compression with forceful torsion that is necessary to herniate a disc in the absence of a fracture to the bony portions of the spine. *See Affidavit at 3-4.* Simply stated, Dr. Baratta's opinions concern the scientific research in the field of biomechanics which has shown that discs do not herniate as a result of a single event as is commonly believed, unless there are fractures to the bony portions of the spine, or

---

[5] Finally on this point, it is an absolute misrepresentation of the testimony of Dr. Barrata for the Plaintiff to suggest that Dr. Baratta works for a firm "whose sole clientele consists of insurance companies and lawyers." *See Plaintiff's Motion at 6.* Rather, the only evidence shows that Rimkus works for both defense and Plaintiff firms, for corporations, and for governmental agencies, on both civil and criminal matters. If Plaintiff is going to attempt to raise matters which are extraneous to the *Daubert* issues, he should at least get his facts correct.

unless the event is so dramatic that the spine is literally doubled over and compressed and twisted in a manner far beyond normal physiologic movement.

13. Plaintiff argues that Dr. Baratta's opinions "ignore" the conclusions of their medical professionals and the drivers' testimony regarding their forward speed at the time of the accident. Dr. Baratta points out, however, that although many physicians will relate a disc herniation to a single event, the actual scientific studies do not support this type of conclusion. As here, physicians typically relate herniation to an accident simply based upon the history given by the patient, as in this case. The physician's role is not to analyze the mechanics of a particular accident or to attempt to determine what forces were exerted upon the occupant of the vehicle. Rather, the physician's emphasis is on diagnosis and treatment. Therefore the fact that Plaintiff's treating doctors might have come to an incorrect assumption regarding causation is neither conclusive nor surprising (particularly regarding Dr. Gutzman, a well known "Plaintiff's" doctor). In fact, in the case of *Hermary v. GCA Services Group, Inc.*, 2008 WL 80696 *3 (S.D. Tex. 2008)(Harmon, J.), the court found Dr. Baratta's testimony to be so helpful and persuasive that it accepted his opinion over that of the treating physician in a back injury case. The trial judge there correctly noted that the treating physician's opinions were simply based upon the Plaintiff's own narratives and not upon any scientific evidence or evaluation. The jury in the instant case should be given the same opportunity that the trial judge had in *Hermany* to weigh the competing opinions from the treating physician and from Dr. Baratta and determine whose opinions are more fully rooted in scientific evidence.

14. Likewise, Dr. Baratta fully explains the supposed "failure" to take into account the forward speed as testified to by the two drivers. Put simply, the key to this case is in the *lateral* (i.e., side to side) forces between the vehicles, not the "longitudinal"

(i.e., forward) forces. The accident occurred while the vehicles were merging at an exit ramp, and their forward speed was essentially the same (25-30 mph for one vehicle and approximately 35 for the other), and the supposed "injury causing" impact would necessarily be the lateral forces involved in the accident, which were 5 mph or less.

15. Defendants respectfully suggest that the Rimkus analysis of the accident and whether it was consistent with the injuries complained of actually goes far beyond the analysis done by treating physicians when they are called upon to render an opinion on whether a particular accident or event caused a certain medical outcome, which is essentially the heart of Plaintiff's complaint here. Dr. Baratta explains in his affidavit that his opinions in the instant case are based upon generally accepted principles in biomechanics and biomedical engineering and are supported by studies that have been conducted in these fields. How Plaintiff's physicians ultimately *treated* those injuries is simply irrelevant to how they were caused.[6]

16. Dr. Baratta's affidavit references and incorporates several articles from authoritative treatises on injuries relating to "lateral" type impacts, including those between tractor trailers and autos. They discuss studies which have been done on cadavers to determine the relationship between disc rupture and impact loading on the spine and which have led to the conclusion that disc ruptures do not occur as the result of a single loading event, unless there are associated massive body injuries to the spine. The author discusses the fact that earlier researchers have concluded that the vertebral body always

---

[6] For example, Dr. Baratta references and attaches an excerpt from the treatise entitled "*Trauma Biomechanics: Introduction to Accident Injury*", which is a widely accepted authoritative treatise in the field of biomechanics. The excerpt shows that it is a generally accepted principle in the field of biomechanics that disc herniations are usually the result of a slow degenerative process and not due to trauma unless the traumatic event results in fracture to the bone or significant hyper flexion and compression with forceful torsion beyond the parameters of normal physiologic motion. The Plaintiff was 59 at the time of the accident and would be expected to have such degenerative processes that each of us undergoes when we age.

{03464242.DOC / }

8

broke before the adjacent disc incurred visible damage. Even loads causing fracture of the vertebral body did not result in herniation or excessive bulging.

17.    Dr. Baratta explains that in order to render an opinion as a biomechanical and accident reconstruction expert in this case, it was necessary for him to try to evaluate the probable forces which were placed upon the human tissue of the occupants of the vehicle during the accident. His review of the photographs as well as the anecdotal information available to him (including the deposition of the Plaintiff) led to the conclusion that this was a shallow and mild sideswipe collision. This conclusion was not a "guess" or "speculation" as urged by Plaintiff, but based on studies conducted with similar accidents and vehicles, as well as the damage they cause to vehicles and the effects on passengers. *See Affidavit of Dr. Baratta.* Sideswipe collisions are fairly common and often result in *allegations* of injury. As such, they are of interest in the field of biomechanics and accident reconstruction. Dr. Baratta attaches several papers touching on the subject of such impacts and claims of injury. These papers were generally based upon studies in which the researchers intentionally caused low speed collisions between various types of vehicles (including large trucks and passenger vehicles such as those involved in the present case). Various scientific instruments were used to measure the specific dynamic effects of the impacts on the vehicles and their occupants. The results indicated that *even where there was significant damage to the passenger car*, there were only minor accelerations and speed changes being experienced by the car and its occupants. The studies illustrate that low comparative speed collisions typically do not result in high dynamic effects to occupants, even when there is a great size disparity between the objects involved.

18. The above studies – and others not listed here but provided in the affidavit and report – support the Rimkus opinion that the likelihood of the type of injuries claimed by Plaintiff are extremely remote in a such a low impact sideswipe collision, particularly those involving a lack of substantial hyperflexion and compression and no fractures. There is more than enough peer-reviewed published material attached to and supporting Dr. Baratta's affidavit to belie Plaintiff's bald, unsupported claims regarding the supposed lack of reliability of Dr. Baratta's testimony.

19. In light of the foregoing discussion, it is obvious that the fields of biomechanics and accident reconstruction involve legitimate scientific studies that go far beyond the kin of an average juror, and even beyond what is normally involved when a physician is asked to render an opinion on causation in an accident case. In this case, Dr. Baratta's analysis lead to the conclusion that minimal forces would have been exerted upon the Plaintiff during the impact event, and would not have caused the supposed herniations. There is no "analytical gap" between the qualifications of Defendants' experts, the methodology employed and the opinions reached such that their opinions are unreliable. Defendants have shown that their experts' conclusions are "'grounded in the methods and procedures of science" and are not just speculation. In fact, all of the challenges are simply matters for cross-examination, rather than exclusion. This is *exactly* the conclusion that this Court reached in the *Hernandez* case in a challenge to a biomechanics expert.

20. In *Hernandez,* the Plaintiff sought to strike the trucking company's biomechanical expert on four grounds, virtually identical in nature (if not actual wording) to those here, specifically, that the expert: (1) was not qualified as an accident

reconstruction or impact analysis expert,[7] (2) was not qualified to render medical opinions as to the diagnosis or cause of Plaintiff's injuries; (3) had insufficient support for the analysis determining the level of force produced as a result of the collision between Plaintiff's vehicle and Defendant's tractor trailer; and (4) did not base his opinions on sufficient facts or data or reliable principles and methods. *See Hernandez v. Swift Transp. Co., Inc.,* 2010 WL 3211058 *2 (W.D. Tex. 2010).

21. In addressing the nature of the expert's testimony there, this court specifically noted that the expert:

> is not attempting to recreate the accident to explain the events as they occurred on the date of the accident. [He] will opine on the level of injury expected to be sustained by a driver who is involved in a particular type of accident, in other words, he will discuss injury causation analysis ("ICA"). ICA "is the examination of a collision event in order to understand its nature and to determine its essential features, including the causation of injuries."

*Id.* at 3. That is *exactly* what Defendants' experts here are doing. The court then looked to the expert's qualifications, noting the experience in "the impacts of certain events on the human body, including the injury potential of certain vehicle accidents; the human response to acceleration; and the biomechanics of whiplash in low velocity collisions" and determined he was qualified to testify.[8] This Court specifically rejected the Plaintiff's arguments that his proposed testimony was unreliable because he had not examined the vehicle or considered the Plaintiff's testimony. *Id.* at 3. The Court concluded that the Plaintiff's complaints:

---

[7] Plaintiff here does not even bother attempting to claim that Dr. Baratta is not an imminently qualified accident reconstruction expert.

[8] The Court noted the expert in *Hernandez* had a doctorate in human physiology, whereas here Dr. Baratta has multiple degrees in biomechanics, the very area in which he seeks to testify. Like the expert in *Hernandez*, Dr. Baratta has taught the very subject on which he will testify in medical school and has done substantial research in the area.

{03464242.DOC / }

appears to be a dispute between the experts that is to be reconciled by the jury. The remaining challenges to Harding's report involve challenges raised by Plaintiff that Plaintiff can pursue on cross examination or via his own rebuttal witness.

*Id.* at 3. That same result should occur here.

22. In short, all of the underlying purposes of *Daubert* have been satisfied, and the Plaintiffs' motion should be denied in its entirety.

23. To the extent believed necessary by the Court as a part of its gatekeeping function, Defendants **request an oral hearing** on this motion so that Dr. Baratta can appear and give testimony supporting his reliability.

## CONCLUSION

Plaintiffs' *Daubert* motion is, at best, nothing more than an attack on the accuracy of the conclusions that Dr. Baratta reached. Whether an opinion is right or wrong is properly the subject of cross-examination, not a motion to exclude. The Motion to Exclude should be denied and Defendant' expert should be permitted to testify.

Respectfully submitted,

_____
LARRY D. WARREN
State Bar No. 20888450
ATTORNEY-IN-CHARGE
**ATTORNEYS FOR DEFENDANTS**

OF COUNSEL:

NAMAN HOWELL SMITH & LEE, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone: (210) 731-6350
Facsimile: (210) 785-2950
lwarren@namanhowell.com

{03464242.DOC / }

12

**CERTIFICATE OF SERVICE**

This is to certify that on the 13th day of July 2015 a true and correct copy of the foregoing document has been sent to the following via electronic court filing:

*Via E-file Notification:*
Dale Hicks
THOMAS J. HENRY INJURY ATTORNEYS
1417 Fredericksburg Rd., Suite 507
San Antonio, Texas 78229
Telephone: (210) 656-1000
Facsimile:  (210) 986-0601
dhicks@tjhlaw.com
**ATTORNEYS FOR PLAINTIFF**

**CORPUS OFFICE:**
512 Starr Street
Corpus Christi, Texas 78401
Telephone: (361) 985-0600
Facsimile: (888) 580-0600

_____
LARRY D. WARREN